UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK THOMAS,

        Plaintiffs,

v.

CITY OF EASTPOINTE AND MARK
BARR,

        Defendants.

Case No. 15-11443

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [26]

Plaintiff Derrick Thomas filed this civil rights lawsuit on April 21, 2015, alleging violations of his Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 by Defendants, Officer Mark Barr and the City of Eastpointe. Defendants filed the Instant Motion for Summary Judgment [26] on May 31, 2016. Both parties have timely briefed the issues before the Court: Plaintiff filed a Response to the Summary Judgment Motion [32] on July 11, 2016, and Defendants filed a Reply [35] on July 25, 2016. At the conclusion of a hearing held on September 9, 2016, the Court took the motion under advisement.

For the reasons explained below, Defendants' Motion for Summary Judgment [26] is **DENIED IN PART** and **GRANTED IN PART**.

## FACTUAL BACKGROUND

In May 2013, Plaintiff Derrick Thomas lived with his girlfriend, Georvanna Solomon, in a rental home in Eastpointe, Michigan.  On the evening of May 3, 2013, Mr. Thomas and Ms. Solomon were visited there by Antoine Clements (Plaintiff's relative) and Jennifer Lyles (Clements' girlfriend).  Plaintiff testified that he did not believe he or any of the others drank alcohol that evening. Clements testified that Plaintiff did not drink, but that Clements himself drank a few beers and a half pint of vodka that Lyles brought.

As the evening transitioned into early morning, Clements and Lyles began arguing, exchanging heated words and pushing each other. Plaintiff testified that Clements shoved him once, too.  After Lyles and Clements exited the house, Plaintiff followed.

Neighbors placed four 911 calls in response to the confrontation. The first dispatch report states: "Assault in progress . . . Male and female yelling at each other.  Male is assaulting the female in the driveway and also damaging a vehicle. No weapons seen."[1]  The second dispatch report provides: "We're getting multiple calls.  They're gonna be out in a driveway.  Male assaulting a female."[2]  Defendant Barr and Officer Jeffery Mezner reported to the scene in separate cars. Barr drove up immediately behind Mezner.

---

[1] Def.'s Ex. D, 05-04-2013_04.02.21.6a_-_50EPSS1_(Voice).WAV, at 0:25-0:30.
[2] Def.'s Ex. D, 05-04-2013_04.04.08.5a_-_50EPSS1_(Voice).WAV, at 0:00-0:07.

The Court has had the opportunity to examine video footage recorded by the officers' dashboard cameras. The video from Defendant Barr's vehicle shows that when Plaintiff and Clements first came into Barr's view, Clements was lying in the street, near the sidewalk on Barr's right.  Plaintiff stood close to Clements when the officers arrived, but walked away from him, across the street toward the sidewalk on Barr's left.  A third individual also stood nearby in the street, slightly further down the road.  Plaintiff, Clements, and the third individual did not appear to be interacting at that time.  As the officers pulled up, Plaintiff crossed to the left sidewalk and began walking down the street, away from the officers.  Meanwhile, the third person walked closer to Clements; however, as Clements began to pick himself up, the third individual turned around and followed Plaintiff.  Clements stood and walked toward the left sidewalk around the same time that the officers exited their vehicles and approached him.

The video footage shows that shortly after Clements started walking, Plaintiff jogged towards Clements while someone repeatedly said "What you gonna do?" in an aggressive tone. Plaintiff's hands were at his sides, near his waist, and the officers appeared to be close enough to see that he was not holding a weapon.  Plaintiff was within arm's reach of Clements but did not strike him or visibly prepare to strike him.  At that time, the officers were also fairly close to Clements.  Plaintiff began to turn away from Clements and the officers around the

same time that Defendant Barr said, "Both of you guys get on the fucking ground."

As Plaintiff walked away at a normal pace, Barr repeated, "Get on the ground."

Barr followed Plaintiff while Mezner approached Clements, saying, "Get on the

ground." When asked how Plaintiff responded to the officers' commands to get on

the ground, Barr testified that Plaintiff "acted like [the officers] weren't even

there" and "just kept walking away."[3]

Barr tased Plaintiff approximately five to ten seconds after ordering Plaintiff

to get on the ground. Barr did not warn Plaintiff that he would be tased if he failed

to comply. Barr and Mezner acknowledged during depositions that under city

policy, officers are supposed to issue a warning before tasing an individual if

possible under the circumstances.[4] Barr testified that he did not think a warning

was prudent, explaining: "Everything was unfolding fast and … I didn't know

what his intentions were, he was facing away from me, I couldn't see his hands, I

didn't know … [if he had] any kind of weapons."[5]

Plaintiff fell to the ground after being tased. Defendant Barr, joined

occasionally by Mezner (who also kept watch over Clements), proceeded to

handcuff Plaintiff and take him to his car. The manner in which the handcuffing

occurred is disputed. Plaintiff testified that after he fell to the ground, an officer

did something that caused a part of the officer's body to forcefully collide with

---

[3] *See* Barr Dep. 15:2, 16:14, Feb. 15, 2016.
[4] *See* Barr Dep. 16:21-25, 17:1-2, 16:14, Feb. 15, 2016; Menzer Dep. 7:16-21, Feb. 15, 2016.
[5] *See* Barr Dep. 17:12-22, 16:14, Feb. 15, 2016

Plaintiff's back. Plaintiff initially testified that the officer "jumped on [his] back hard,"[6] but then admitted that he did not know exactly what happened or what part of the officer's body collided with him. Plaintiff also testified that the officer grabbed one of his arms and pushed it forcefully to the back of his head while telling Plaintiff to stop resisting. The officer then allegedly grabbed Plaintiff's other arm and applied handcuffs to his right wrist and his left elbow. Plaintiff conceded that, at the time, he did not ask the officers to move his handcuffs or tell them that his elbow hurt while he was on the ground. Plaintiff testified that two officers helped Plaintiff stand. He testified that the officer on his right side helped him up "the right way," but the officer on his left side yanked him up by his handcuffs.[7]

The officers' account of the handcuffing process differs from Plaintiff's. Both officers admitted at the depositions that Plaintiff was compliant during the arrest process. However, Defendant Barr denied jumping on Plaintiff's back or putting any weight on him. He also denied cuffing Plaintiff in the area of his forearm and elbow, testifying that he applied both cuffs to Plaintiff's wrists. He stated that he checked whether the cuffs were properly spaced by inserting a finger into the cuffs and double locking them. Finally, he testified that he grabbed Plaintiff by his arms or beneath his arms (not by the handcuffs) when helping him

---

[6] *See* Thomas Dep. 159: 2-5, March 4, 2016.
[7] *Id.* at 170:5-7.

to his feet.  Mezner testified that Defendant Barr asked Plaintiff to put his hands behind his back before cuffing him, and that Plaintiff complied.   He testified that Barr cuffed Plaintiff's wrists (not his elbow) and checked the cuffs' tightness by double locking them.  Mezner explained that both officers assisted Plaintiff to his feet, but did not explain how they did so.

The videos do not clearly depict the handcuffing process.  However, on the dashboard video from Defendant Barr's car, Barr can be heard telling Plaintiff to put his hands behind his back and to hold his palms together in a "praying" position.  Shortly thereafter, Plaintiff asks, "Like this?"[8]  Barr repeats his command and promptly says, "There you go.  Just like that."[9]  At one point, it looks like an officer standing next to Plaintiff drops a flashlight, and Plaintiff immediately says, "Ow.  What the hell was that?"[10]

The officers walked Plaintiff to Defendant Barr's car.  The video from Mezner's car shows the officers stopping briefly; they appear to manipulate something behind Plaintiff's back—possibly his handcuffs.[11]  Camera 2 on Defendants' Exhibit F shows Plaintiff in the back seat of Barr's car from the moment he is placed in it through the moment he exits the car at the police station. Starting around 4:16:17, Plaintiff says several times that his cuffs are too tight.  At

---

[8] *See* 1:04-1:16, 494_Front Camera.mp4, Defs.' Ex. E.
[9] *Id.*
[10] *See* 4:06:53, Camera 1, Defs.' Ex. F, and/or 00:53 on 601_Front Camera_SCALE 238.mp4, Defs.' Ex. E.
[11] *See* 4:30-4:35, 601_Front Camera.mp4 on Defs.' Ex. E.

that time, it seem that he is alone in the car—Defendant Barr does not appear to enter the car until several minutes later, around 4:23:05.  Around that time, Plaintiff starts speaking with Defendant Barr (Barr is not visible on camera, but his identity can be inferred because he mentions that he tased Plaintiff).  Approximately three minutes later, Plaintiff seems to say, "Sir, my arms hurt.  My arms are tired."[12]  Periodically thereafter, Plaintiff starts leaning his body and moving his arms in a manner that could indicate discomfort.[13]  During such movements, the cuffs occasionally come into view, affixed to his wrists or slightly above his wrists (not his left elbow).[14]  When Officer Barr gets back into the vehicle and begins driving away from the scene, Plaintiff says, "Hey, can you take these cuffs off, man?  My wrist is bleeding."[15]  The car pulls to a stop at the police station about one-and-a-half minutes later.

After Plaintiff complained to jail staff that he was injured, he was taken to St. John Hospital.  He was diagnosed with a fractured radial head, and his arm was put in a sling.  Plaintiff testified that he believed Defendant Barr caused the fracture when he grabbed Plaintiff's left arm and pushed it forcefully up to Plaintiff's head before applying the cuffs.

---

[12] *See* 4:26:45, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.
[13] *See, e.g*, 4:30:33, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.
[14] *See, e.g.*, 4:30:36 and 4:30:53, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.
[15] *See* 4:42:48, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.

On December 6, 2013, in the 38th District Court in Eastpointe, Michigan, Plaintiff pled guilty to a misdemeanor charge of hindering and obstructing arrest arising from the May 4, 2013 incident.  When asked during his plea hearing to identify the factual basis for his plea, Plaintiff testified that he walked by a fight in which he was not involved, an officer responding to the fight ordered him to stop, and he walked away.

## SUMMARY JUDGMENT STANDARD

"The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Kalamazoo Acquisitions, L.L.C. v.*

*Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).  The nonmoving party "may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations … [but instead] must present affirmative evidence."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

### ANALYSIS

### I.    Plaintiff's Excessive Force Claims Against Officer Barr

Plaintiff argues that Defendant Barr employed excessive force by (1) tasing him and (2) handcuffing him in a harmful manner. The question of whether force employed in a seizure is excessive does not turn on the extent or even the existence of injury.  *Miller v. Samilac County*, 606 F.3d 240, 252-54 (6th Cir. 2010) (citing *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006) (denying qualified immunity on a Fourth Amendment excessive force claim to an officer who slapped a suspect in the face, causing no injury)).  Instead, "[t]o make a showing of excessive force 'under the Fourth Amendment, [courts] apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants.'" *Gorney v. Charter Twp. of Brownstone*, No. 14-12731, 2016 U.S. Dist. LEXIS 116892, at *21 (E.D. Mich.

Aug. 31, 2016) (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989).

Courts consider three factors "in evaluating an excessive force claim: the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Miller*, 606 F.3d at 253 (citing *Graham*, 490 U.S. at 396). The Court must view the facts "from the perspective of a reasonable officer on the scene." *Id.* at 251 (citing *Graham*, 490 U.S. at 395–96).

Defendant Barr argues that he is entitled to qualified immunity. "To determine whether an officer is entitled to qualified immunity, a court evaluates two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Richko v. Wayne County, Mich.*, 819 F.3d 907, 914–15 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

## A. Tasing

The first *Graham* factor directs the Court to examine the severity of the crime for which Barr was called upon to investigate. Barr arrested Plaintiff on charges of disorderly conduct and hindering and obstructing arrest, relatively minor crimes. Though Barr arrived on the scene in response to reports of a man assaulting a woman and damaging a vehicle, the video evidence shows that Barr

did not witness anything on the scene that would lead a reasonable officer to believe that such crimes were ongoing.  Therefore, Defendant Barr's decision to tase Plaintiff cannot be justified by the need to stop such crimes.

The second *Graham* factor—whether the suspect posed an immediate threat to the safety of the officers or others—is also problematic for Defendant Barr's claim.  Arguably, a reasonable officer arriving on the scene might have inferred that Plaintiff and Clements had been fighting, and that Plaintiff had knocked Clements down.  Further, a reasonable officer could have determined that the hostility between Plaintiff and Clements had not completely abated, since Plaintiff turned around and advanced on Clements in an aggressive manner as the officers approached.  However, Plaintiff was walking away from Clements when the officers first arrived, implying that any fight between them had ended.  Though Plaintiff walked back toward Clements in an aggressive way, his hands remained at his sides—he did not move to strike Clements.  Moreover, a reasonable jury viewing the video evidence could find that Defendant Barr saw Plaintiff's hands, and was thus able to see that Plaintiff was not holding a weapon.  Even if Barr did not see Plaintiff's hands, he had no particular reason to believe that Plaintiff was armed, especially because the first dispatch report explicitly provided that no

weapons had been seen.[16] Furthermore, the second dispatcher failed to disclose any information about weapons, despite mentioning that multiple 911 calls about the incident had been received.  Finally, Barr never asked Plaintiff to show his hands, so a reasonable officer in his position could not have believed that Plaintiff was deliberately concealing his hands in a manner that might suggest the presence of a weapon.

The majority of the parties' arguments concern the final *Graham* factor: whether the suspect actively resisted arrest or attempted to evade arrest by flight. The Sixth Circuit has found tasing (even repeated tasing) justified where the person tased was "actively resisting arrest."  *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). However, Sixth Circuit precedent also holds that tasing may be excessive when done in response to *passive* resistance, including refusal to comply with an officer's command to exit a car or an apartment.  *Kent v. Oakland County*, 810 F.3d 384, 393–94 (6th Cir. 2016); *Goodwin v. City of Painesville*, 781 F.3d 314, 319, 324–26 (6th Cir. 2015); *Eldridge v. City of Warren*, 533 F. App'x 529, 530–31, 535 (6th Cir. 2013). "In determining whether officers used excessive force, courts have placed great weight on officers' failure to warn a suspect before

---

[16] *See* Def.'s Ex. D, 05-04-2013_04.02.21.6a_-_50EPSS1_(Voice).WAV, at 0:25-0:30 (the dispatcher clearly states, "No weapons seen.").

deploying a taser." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 498 (6th Cir. 2012) (Cole, J., concurring).

The mere fact that Plaintiff failed to comply with orders to get on the ground does not establish that he was actively resisting arrest.  Plaintiff's noncompliance was not accompanied by any other signs of resistance—as Defendant Barr testified, Plaintiff simply acted as if the officers were not there.  It was not as though Plaintiff actively struggled or fought the officers' efforts to subdue and arrest him. Defendants argue that Plaintiff attempted to evade arrest by walking away from the officers.  However, the video shows that he was walking too slowly for any reasonable officer to believe he was attempting to escape.  In the Court's view, the final *Graham* factor favors Plaintiff.

Defendants argue that the final *Graham* factor supports their position because Plaintiff pled guilty to hindering or obstructing arrest.  More precisely, they assert that Plaintiff's conviction "precludes him from arguing that he did not resist, hinder, or obstruct by failing to comply with an officer's directive to 'get on the ground.'"

The Court "must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816–17 (6th Cir. 2010) (quoting *Abbott v. Michigan,* 474 F.3d 324, 330 (6th Cir. 2007)).  Michigan's res judicata doctrine provides that a

judgment "bars a subsequent action when '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Adam v. Bell*, 311 Mich. App. 528, 532 (Ct. App. Mich. 2015) (quoting *Adair v. State*, 470 Mich. 105, 121 (Mich. 2004)).  Under Michigan's collateral estoppel doctrine, a judgment may preclude litigation of an issue in a later proceeding if the identical issue was actually litigated and determined in the earlier proceeding; the parties in the later proceeding (or their privies) had a full and fair opportunity to litigate the issue in the earlier proceeding; and the party invoking collateral estoppel would have been bound by the judgment if it had gone against him.  *Wells Fargo Bank, N.A. v. Null*, 304 Mich. App. 508, 520–22 (Ct. App. Mich. 2014).

Here, neither Defendants nor their privies participated in the hindering and obstructing case.  Moreover, the issue of whether Plaintiff "actively resisted" arrest within the meaning of Fourth Amendment excessive force law was not litigated in the criminal proceedings, and could not have been resolved there.  Thus, Plaintiff's guilty plea has no preclusive effect on the issue.

In sum, none of the *Graham* factors favor Defendants, and at the very least, the final factor seems to support Plaintiff.  The Court finds that a reasonable jury could find that the tasing by Officer Barr violated Plaintiff's constitutional right to be free of excessive force.

The Court also concludes that Plaintiff's right not to be tased under the circumstances had been clearly established by May 4, 2013.  In several of the aforementioned cases, the Sixth Circuit held that officers violated the plaintiffs' constitutional rights by tasing them, even though the plaintiffs had failed to comply with explicit commands.  *See, e.g., Kent*, 810 F.3d at 393–94; *Goodwin*, 781 F.3d at 319, 324–26; *Eldridge*, 533 F. App'x at 530–31, 535.  The *Goodwin* and *Eldridge* courts determined that the right not to be tased in the relevant circumstances had been clearly established before May 4, 2013.  *Goodwin*, 781 F.3d at 327 (clearly established before June 2010); *Eldridge*, 533 F. App'x at 535 (clearly established before June 2009).  In *Kent*, the Sixth Circuit found that the right had been clearly established before September 2013.[17]  Admittedly, none of the plaintiffs in those cases were tased in circumstances identical to Plaintiff's.  However, the facts are similar enough that the Court believes that a reasonable officer would have known it was unconstitutional to tase Plaintiff, just as a reasonable officer would have known it was unconstitutional to tase the plaintiffs in those cases.

## B. Handcuffing

Plaintiff's excessive force handcuffing claim is a close call. It is well established that "[t]he Fourth Amendment prohibits unduly tight or excessively

---

[17] The *Kent* court didn't rely on any cases issued between May and September 2013, so it implicitly reached the conclusion that the right had been clearly established before May 2013 (when Plaintiff was tased).

forceful handcuffing during the course of a seizure." *Miller*, 606 F.3d at 252 (citing *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009)). This right was clearly established for qualified immunity purposes at the time of Plaintiff's arrest on May 4, 2013. See *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) ("The right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes") (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001)). Furthermore, Sixth Circuit "precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight." *Burchett*, 310 F.3d at 944.

It must be noted, however, that "not all conduct that causes an arrestee pain or discomfort violates the Fourth Amendment." *See Graham*, 490 U.S. at 396. "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing." *Morrison*, 583 F.3d at 401. The Court must inquire "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Miller*, 606 F.3d at 252 ("In determining whether there has been a violation of the

Fourth Amendment, we consider not the extent of the injury inflicted, but whether an officer subjects a detainee to gratuitous violence.")

The Sixth Circuit's analysis in *Morrison* is instructive. There, the court relied on the testimony of a witness, who explained that the handcuffs around the Plaintiff's wrists "were so tight that [Plaintiff's] skin was all pinched over" and "turning black and blue," to determine that the plaintiff alleged an adequate injury to preclude summary judgment. *Morrison*, 583 F.3d at 402 (internal citations omitted). Though both the plaintiff and the witness asked the arresting officer to loosen the plaintiff's handcuffs, he refused to do so. The court disagreed with the defendant's assertion that "allegations of bruising and wrist marks alone are, as a matter of law, insufficient to establish a 'physical injury.'" *Id*. The court further noted: "the injury required to sustain a successful handcuffing claim is not as demanding as [the defendant] would suggest." *Id.* (citing *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997)). In conclusion, the court stated, "the bruising, skin marks, and attendant pain allegedly suffered by [Plaintiff] during the forty to fifty minutes she was handcuffed creates a genuine issue of material fact regarding the existence of an injury." *Morrison*, 583 F.3d at 403.

The video evidence here plainly indicates that Plaintiff complained about the fit of the handcuffs several times, thereby satisfying the first element of the

*Morrison* test.[18] The second element – whether Officer Barr ignored Plaintiff's complaints – is significantly less clear. The lengthiest period of Plaintiff's complaining occurs when Defendant Barr does not appear to be present in the vehicle.[19] Plaintiff says, "Hey, I need some handcuffs on my wrists. Please give me some handcuffs on my wrists . . . I got tight cuffs on, please. Please help me. Please, these cuffs are too tight . . . please get these cuffs off of me."[20] Though the video shows Plaintiff complaining about the pain caused by the handcuffs, it does not seem that Defendant Barr ignored him because Barr appears to be completely unaware of Plaintiff's complaints. The next time Plaintiff mentions his arm pain, about 11 minutes later, he tells Defendant Barr that his arms are tired.[21] It is certainly true that Plaintiff did not explicitly state that his handcuffs were too tight and that he needed them to be loosened. However, a jury could find that Plaintiff's complaints put Defendant Barr on notice as to the pain Plaintiff felt as a result of the handcuffs. Furthermore, when Defendant Barr entered the vehicle to drive to the police station, Plaintiff immediately said, "Hey, hey, can you take these cuffs off, man? My wrists is bleeding."[22] Although the drive to the station was very short

---

[18] *See, e.g.*, 4:15:40-4:17:36, 4:26:45-4:26:48, and 4:42:48-4:42:51, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.

[19] *See* 4:15:40-4:17:36, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.

[20] *Id.*

[21] *See* 4:26:45-4:26:48, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.

[22] *See* 4:42:48-4:42:51, Camera 2, Defendant Barr In-Car Video, Defs.' Ex. F.

– approximately one minute and forty seconds long – Defendant Barr ignored Plaintiff's request to remove or adjust the handcuffs.

The third part of the *Morrison* test – whether the Plaintiff experienced some physical injury resulting from the handcuffing – is also unclear. There seems to be a question as to whether Plaintiff's injury resulted from the fall after the tasing or the handcuffing. Plaintiff testified during his deposition that after falling to the ground upon being tased, his head and his wrists hurt.[23] He then stated that the officer "grabbed [his] arm and pushed it hard up in the back of [his] head" and that these actions "hurt it."[24] He also maintains that the officer cuffed his left elbow, though the dashcam video only ever shows that the handcuffs were affixed to his wrists.[25]  Plaintiff also conceded that, at the time of the handcuffing, he did not ask the officers to move his handcuffs or tell them that his elbow hurt while he was on the ground.[26]

After arriving at the jail, Plaintiff was taken to St. John Hospital,[27] and was later diagnosed with a radial head fracture.[28] His arm was also placed in a sling.

---

[23] *See* Thomas Dep. 156: 1-16, March 4, 2016.
[24] *See* Thomas Dep. 158: 9-19, 160: 9-10, March 4, 2016.
[25] *See* 4:26, 601_Front Camera.mp4 on Defs.' Ex. E.
[26] *See* Thomas Dep. 164: 19-25, 165: 2-5, March 4, 2016.
[27] *See* Thomas Dep. 187:14-188:14, March 4, 2016.
[28] "The radius bone goes from your elbow to your wrist. The radial head is at the top of the radius bone, just below your elbow. A fracture is a break in your bone." *Radial head fracture- aftercare*, MEDLINEPLUS, https://medlineplus.gov/ency/patientinstructions/000561.htm (last visited Aug. 31, 2016).

Plaintiff subsequently underwent 10 months of physical therapy and chiropractic care at One Source Health & Spine, from March through December of 2014.[29]

The Court concludes that Plaintiff is entitled to present his excessive force claim on a theory of unconstitutional tasing and unduly tight handcuffing to a jury, and **DENIES** summary judgment to Defendant Barr.

## II.     Plaintiff's Municipality Claim Against City of Eastpointe

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess*, 735 F.3d at 478 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  Here, Plaintiff's sole evidence of an illegal policy or custom is the City's failure to investigate or review Defendant Barr's use of force in the specific incident at issue in this case.

---

[29] Pl.'s Ex. H.

The Sixth Circuit has recognized that a pattern of inadequately investigating excessive force claims can establish a "custom of tolerance or acquiescence" sufficient to support municipal liability. *Burgess*, 735 F.3d at 478. However, the failure to investigate a single incident is insufficient. *See id.* at 478–79 (affirming summary judgment in favor of municipality on failure-to-investigate claim because plaintiffs failed to show "any prior instances of a failure to investigate claims of excessive force"); *Thomas*, 398 F.3d at 432–34 (affirming summary judgment in favor of municipality and rejecting plaintiffs' "attempt[] to infer a municipal-wide policy based solely on one instance of" inadequate investigation). Because Plaintiff relies on a single incident, he has raised no genuine issue of material fact under a custom-of-tolerance theory.

Plaintiff appears to advance his claim under a failure-to-supervise theory rather than a custom-of-tolerance theory, but that does not help him. "While plaintiffs may successfully bring claims against municipalities for failure to supervise where they do not conduct reviews or monitor the performance of their employees, plaintiffs must also show that the municipality lacks such a process out of deliberate indifference." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 492 (6th Cir. 2014) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012)). A plaintiff "must show prior instances of unconstitutional conduct" to show deliberate indifference. *Marcilis*, 693 F.3d at 605. Because Plaintiff has

produced no evidence of prior instances of unconstitutional conduct, he has raised no genuine issue of material fact under a failure-to-supervise theory.

Plaintiff conceded during the hearing on September 9th that there is no basis for his municipal liability claim against the City of Eastpointe. Accordingly, the Court will **GRANT** summary judgment to Defendant City of Eastpointe.

CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [26] is **DENIED IN PART** and **GRANTED IN PART**. The Court finds that Defendant Barr is not entitled to qualified immunity on Plaintiff's excessive force claim. The Court also finds that there is no evidence upon which to support a claim for municipal liability against Defendant City of Eastpointe.

**SO ORDERED**.


                                    s/Arthur J. Tarnow
                                    Arthur J. Tarnow
Dated: October 20, 2016             Senior United States District Judge